UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESSEX INSURANCE COMPANY,

       Plaintiff,

v.                                    Case No. 11-12293

XTREME FITNESS STERLING HEIGHTS and
FRANK ALAMPI,

       Defendants.
                                  /

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT
AS TO DEFENDANT XTREME FITNESS AND FOR SUMMARY
JUDGMENT AS TO DEFENDANT FRANK ALAMPI**

      Plaintiff Essex Insurance Company ("Essex") initiated this diversity action seeking a declaratory judgment that it is has no duty to defend or indemnify its insured, Defendant Xtreme Fitness Sterling Heights ("Xtreme Fitness"), in a state court tort action filed by Defendant Frank Alampi in the Macomb County Circuit Court. Before the court are Plaintiff's motions for default judgment as to Defendant Xtreme Fitness and for summary judgment as to Defendant Alampi. The court heard oral arguments on the motions on February 15, 2012. For the reasons set forth below, the court will grant both motions.

**I. BACKGROUND**

      The material facts giving rise to this action are largely undisputed. Plaintiff issued a commercial general liability insurance policy ("Insurance Policy") in force from July 16, 2006, to July 16, 2008, insuring Defendant Xtreme Fitness, a company formerly in the business of operating workout facilities in Michigan. (Pl.'s Mot. Summ. J. Ex. 1

000001, Dkt. # 16-1.)  Pursuant to the Insurance Policy's terms, Plaintiff agreed to defend and indemnify Defendant Xtreme Fitness against any lawsuit seeking damages for bodily injuries that fell within the scope of the policy's terms.  (*Id.* at 000023, Dkt. # 16-1.)  Plaintiff's duties arising from the Insurance Policy, however, were conditioned upon Defendant Xtreme Fitness's reciprocal duty to notify Plaintiff "as soon as practicable of an 'occurrence' or an offense which may result in a claim."  (*Id.* at 000031, Dkt. 16-1.)  "Occurrence" is defined in the Insurance Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at 000035.)

On June 23, 2008, Defendant Alampi was exercising at Defendant Xtreme Fitness's facility in Sterling Heights, Michigan, and suffered serious injuries when the bar of a weight lifting machine containing 150 pounds of weights fell on his chest.  (Pl.'s Mot. Summ. J. Ex. 9 ¶ 4, Dkt. # 16-9.).  In a state court action filed in March 2011, Defendant Alampi alleged that Defendant Xtreme Fitness failed to properly maintain the weight machine in a reasonable and safe condition and, as a result, the machine's safety mechanism was missing screws and in disrepair.  (*Id.* at ¶¶ 4-5.)  Despite Defendant Xtreme Fitness's duty to notify Plaintiff of Defendant Alampi's accident and injuries, Plaintiff did not learn of the accident until nearly two years after it occurred when, in April 2010,[1] Alampi's attorney—not Xtreme Fitness—sent a letter to Plaintiff's

---

[1] This assumes the earlier of two possible dates of notice.  Plaintiff and Defendant Alampi disagree about when in 2010 Plaintiff first learned of Alampi's accident.  In its motion for summary judgment, Plaintiff claims that it first learned of the accident on August 30, 2010, when Fitness Instance, acting on behalf of Defendant Xtreme Fitness, sent Plaintiff a form titled "General Liability Notice of Occurrence/Claim."  (Murray Dec. ¶¶ 5-6, Nov. 30, 2011, Dkt. # 16-5.)  Defendant

agent detailing Alampi's accident. (Def. Alampi's Resp. to Pl.'s Mot. Summ. J. 7, Dkt. # 19.) After learning of the accident and Defendant Alampi's intent to file suit against Defendant Xtreme Fitness, Plaintiff issued a reservation of rights letter in October 2010 and began investigating Alampi's allegations. (Pl.'s Mot. Summ. J. Ex. 7, Dkt. # 16-7.) Plaintiff's investigation, however, bore little fruit. In April 2009, a year before Plaintiff learned of the accident, Defendant Xtreme Fitness went out of business and sold its equipment in a "fire sale," without maintaining records of the condition of the equipment or to whom the equipment was sold. (Prinzi Dep.33:13-34:5, Oct. 24, 2011, Dkt. # 16-2.) Neither did Defendant Xtreme Fitness retain any business records after closing its doors. (*Id.* at 19:14-23.) Specifically, Paul Prinzi, the former owner of Defendant Xtreme Fitness, indicates that he cannot locate liability release forms signed by individuals who used the gym, (*id.*), or Defendant Xtreme Fitness's accident report log, (*id.* at 11:1-20). An investigator retained by Plaintiff was also unable to locate the manager on duty at the time of the accident, Lisa Nowicki, or any other witnesses who observed the accident. (Harrison Dec. ¶¶ 5-7, Nov. 29, 2011, Dkt. # 16-8.)

Plaintiff filed this action against Defendants Xtreme Fitness and Alampi seeking a declaration that it has no duty to defend or indemnify Xtreme Fitness in the state court

---

Alampi contends that Plaintiff learned of the accident on April 10, 2010, when his attorney sent a "retention letter" to Plaintiff's agent. (Def. Alampi's Resp. to Pl.'s Mot. Summ. J. 7, Dkt. # 19.) The court construes disputed material facts in a light most favorable to the non-moving party on summary judgment and accepts for purposes of deciding the summary judgment motion Defendant Alampi's claim that Plaintiff first had notice of the accident in April 2010. In any event, the parties agree that Plaintiff had no knowledge of the accident until two years after it occurred, give or take two months, and that renders any April versus August dispute immaterial to the resolution of Plaintiff's motion.

3

action commenced by Alampi because Xtreme Fitness did not comply with the occurrence reporting provision of the Insurance Policy. After Defendant Xtreme Fitness failed to file an answer or responsive pleading, Plaintiff requested a clerk's entry of default and filed a motion for default judgment as to Xtreme Fitness. The clerk made an entry of default on August 29, 2011. (Clerk's Entry of Default, Aug. 29, 2011, Dkt. # 10.) In an October 14, 2011 order, the court informed Plaintiff and Defendant Alampi that it would consider the default judgment motion simultaneously with any dispositive motions filed at the end of discovery. (10/14/2011 Order, Dkt. # 14.) On November 30, 2011, Plaintiff moved for summary judgment as to Defendant Alampi, and Alampi responded in opposition on January 6, 2012.

## II. STANDARD

### A. Default Judgment

If a defendant fails to plead or otherwise defend a claim, the clerk shall enter the party's default. Fed. R. Civ. P. 55(a). In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). If obtained, the proponent may file for default judgment by the clerk or by the court. Fed R. Civ. P. 55(b). When the plaintiff's complaint alleges damages for a sum certain, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

**B. Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The moving party discharges its burden by '"showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (internal quotation marks omitted) (citing *Celotex*, 477 U.S. at

324). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872))). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of a claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

### III. DISCUSSION

### A. Discretion to Issue Declaratory Judgment

The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The United States Supreme Court, however, has held that a district court is not compelled to exercise its jurisdiction over declaratory judgment actions. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). To guide a district court in the determination of whether to exercise its jurisdiction over a declaratory action, the United States Court of Appeals for the Sixth Circuit has adopted the following five factor test:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

In applying the five factors to this case, the court finds that the factors militate in favor of the court exercising its jurisdiction. As to the first two factors, the declaratory action will definitively determine whether or not Plaintiff owes a duty to Defendant Xtreme Fitness to defend and indemnify it in the state court action, and "a prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir.2000). Defendant Alampi suggests for the first time in his court-ordered supplemental brief—filed nearly nine months after Plaintiff initiated this action—that Plaintiff should be forced to adjudicate the scope of its duties under the Insurance Policy in the pending state court action. (Def. Alampi's Supplemental Br. 2-3, Dkt. # 23.) The court, however, declines Defendant Alampi's invitation to force Plaintiff to adjudicate its duties under the Insurance Policy in the underlying state court action, and finds that factors three and five weigh in favor of exercising jurisdiction. In *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003), the Sixth Circuit stated that "[i]f [an insurer] in fact [has] no duty to indemnify its insured or to defend them in the state action, then it should not be forced to participate in that action." 327 F.3d at 454. Thus, Plaintiff's initiation of this action is for the valid purpose of avoiding being forced to participate in

the underlying action; there is no evidence that the action is "merely for the purpose of 'procedural fencing." Furthermore, forcing Plaintiff to adjudicate the subject matter of this action in the state court proceeding cannot reasonably be described as a fairer and better alternative remedy in light of the Sixth Circuit's statement that an insurer should not be forced to participate in a state court action if it has no duty to defend or indemnify. Finally, because the record is devoid of any evidence tending to show that this declaratory action would increase friction between the federal and state court systems, factor four also weighs in favor of exercising jurisdiction. Defendant Alampi fails to proffer any evidence to support his bald assertion that the issue of Plaintiff's duties under the Insurance Policy is presently before the state court, and the only relevant documents from the state court action submitted by the parties in this action—Defendant Alampi's complaint and Defendant Xtreme Fitness's answer and notice of affirmative defenses—clearly demonstrates that the scope of the state action is limited to Defendant Xtreme Fitness's liability. (*See* Pl.'s Mot. Summ. J. Ex. 9, Dkt. # 16-9.) Therefore, after carefully considering the *Grand Trunk* factors, the court will exercise its jurisdiction over this matter.

### B. Default Judgment as to Defendant Xtreme Fitness

All of the prerequisites for default judgment against Defendant Xtreme Fitness under Federal Rule of Civil Procedure 55 have been met. Defendant Xtreme Fitness has been validly served, and has failed to appear or otherwise defend this case, and Plaintiff has obtained a clerk's entry of default. Thus, because Defendant Xtreme Fitness has not responded to, or defended against, Plaintiff's complaint, it is deemed to have admitted all of Plaintiff's well-pleaded allegations, *Ford Motor Co. v. Cross*, 441

F.Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visoneering Constr. v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)), and Plaintiff is therefore entitled to default judgment. *See id.*; *see also* Fed. R. Civ. P. 55.

### C. Summary Judgment as to Defendant Frank Alampi

Having determined that Plaintiff is entitled to default judgment against Defendant Xtreme Fitness, the court will now consider Plaintiff's motion for summary judgment as to Defendant Alampi. At the direction of the court, Plaintiff and Defendant Alampi filed supplemental briefs addressing whether an actual case or controversy exists between them in light of the clerk's entry of default and Plaintiff's pending motion for default judgment against Defendant Xtreme Fitness. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, does not exempt district courts from the constitutional requirement that an actual controversy exist. 28 U.S.C. § 2201(a); *see also Aetna Life Ins. Co. V. Haworth*, 300 U.S. 227, 239-41 (1937). Thus, if no actual controversy exists between the parties, the court lacks subject matter jurisdiction and must dismiss the case. Where a declaratory judgment action is based solely on diversity of citizenship, "federal law governs whether a justiciable controversy exists within the purview of the Declaratory Judgment Act." *Standard Fire Ins. Co. v. Am. Economy Ins. Co.*, 894 F. Supp. 1023, 1025-26 (N.D. Tex. 1995).

In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), the United States Supreme Court held that an actual controversy exists within the meaning of the Declaratory Judgment Act and the Constitution between an insurer and an injured party in a declaratory judgment action brought by the insurer, reasoning that were the insurer prevented from naming the injured party in the action, "it is possible that

9

opposite interpretations of the policy might be announced by the federal and state courts." 312 U.S. at 274. The United States Court of Appeals for the Seventh Circuit, citing *Maryland Casualty*, observed that it would be anomalous to conclude that while an actual controversy exists between an insurer and an injured party, an injured party nevertheless may be denied an opportunity to participate in the declaratory judgment action if the insured was in default. *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7tth Cir. 1962); *see also Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352-53 (3d Cir. 1986) (holding that the reasoning of *Maryland Casualty* and *Rauscher* leads "inevitably to the conclusion that a 'case or controversy' exists between [an insurer and an injured party], and that therefore the [injured party has] standing to defend the declaratory judgment action despite the absence of . . . the actual insured"). The Michigan Supreme Court, in construing a state law provision substantially similar to the Federal Declaratory Judgment Act has also held that "even where the dispute between an insurer and an insured has become moot by virtue of the insured's default or refusal to contest the coverage provisions, the actual controversy between the insurer and the injured party remains viable." *Allstate Ins. Co. v. Hayes*, 499 N.W.2d 743, 750 (Mich. 1995). The court agrees with the reasoning of the aforementioned cases, and concludes that an actual controversy exists between Plaintiff and Defendant Alampi.

Turning to the substance of Plaintiff's summary judgment motion, Plaintiff argues that Defendant Xtreme Fitness's failure to comply with the occurrence notification provision of the Insurance Policy excuses its obligation to defend and indemnify Xtreme Fitness in the state court action commenced by Defendant Alampi. "Provisions in

liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of accident or suit are common, if not universal." *Wendel v. Swanberg*, 185 N.W.2d 348, 352 (Mich. 1971). Because the purpose of notice provisions is to allow an insurer to make "timely investigation of [an] accident in order to evaluate claims and to defend against fraudulent, invalid or excessive claims," *id.*, under Michigan law, "it is a well-established principle that an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position," *Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 639 (Mich. 1998). "An insurer suffers prejudice when the insured's delay in providing notice materially impairs the insurer's ability to contest its liability to the insured or the liability of the insured to a third party." *Tenneco Inc. v. Amerisure Mutual Ins. Co.*, 761 N.W.2d 846, 859 (Mich. Ct. App. 2008).

> In determining whether an insurer's position has actually been prejudiced by the insured's untimely notice, courts consider whether the delay has materially impaired the insurer's ability: (1) to investigate liability and damage issues so as to protect its interests; (2) to evaluate, negotiate, defend, or settle a claim or suit; (3) to pursue claims against third parties; (4) to contest the liability of the insured to a third party; and (4) to contests its liability to its insured.

*Aetna Cas & Surety Co. V. Dow Chem. Co.*, 10 F. Supp 2d. 800, 813 (E.D. Mich. 1998). "Michigan law does *not* require an insurer to prove that but for the delay it would have avoided liability." *West Bay Exploration Co. v. AIG Specialty Agencies of Texas, Inc.*, 915 F.2d 1030, 1037 (6th Cir. 1990) (emphasis in original). Generally, the question of prejudice under Michigan law is a question of fact left to the jury. *see Tenneco Inc.*, 761 N.W.2d at 859. However, when only one conclusion can be drawn from the

11

uncontroverted facts, the question is one of law for the court to decide. *Id.*

In the instant case, the undisputed facts establish that Defendant Xtreme Fitness failed to comply with the Insurance Policy provision requiring notice "as soon as practicable" of an occurrence that may result in a claim under the policy, and such failure materially prejudices Plaintiff's interests in the underlying state court action. Plaintiff has demonstrated that as a result of the delay, its ability to investigate and contest Xtreme Fitness's liability is severely limited. First, in dispute in the state court action is whether or not Defendant Alampi signed a liability release. Prinzi, Xtreme Fitness's former owner, maintains that Defendant Alampi signed a release before using the workout facility, (Prinz Dep. 12:8-21, Oct. 24, 2011, Dkt. # 16-2), but Defendant Alampi has stated that aside from signing in each time he worked out, he did not fill out any paperwork, (Alampi Dep. 8:6-9:4, Oct. 24, 2011, Dkt. # 16-4). Had Defendant Xtreme Fitness timely reported Alampi's accident and retained its patrons' liability releases after going out of business, Plaintiff would have the ability to determine whether in fact Defendant Alampi signed a release and ultimately proffer the release in defense of Xtreme Fitness in the state court action. Prinzi has also indicated that Defendant Xtreme Fitness maintained an accident log which documented any reported injury suffered by a patron at the Sterling Heights facility. (Prinzi Dep. 11:1-20, Oct. 24, 2011, Dkt. # 16-2.) Once again, however, because Defendant Xtreme Fitness did not retain its business records, Plaintiff is unable to review the accident log for any relevant information. Defendant Xtreme Fitness's inability to produce its business records also prevents Plaintiff from determining whether Xtreme Fitness performed routine maintenance on its workout equipment, a fact that would cast doubt on Defendant

Alampi's claim that Xtreme Fitness failed to maintain its workout equipment in a condition fit for public use.  Moreover, because Xtreme Fitness sold its workout equipment when it closed more than a year before Plaintiff was informed of Defendant Alampi's accident, Plaintiff never had an opportunity to examine the workout machine in question to determine if it was, in fact, missing any screws or otherwise in disrepair.  Finally, Plaintiff's inability to examine the condition of the machine also prevents it from pursuing possible claims against the manufacturer of the workout machine.  From the foregoing analysis, it is abundantly clear that the approximately two year delay in reporting Defendant Alampi's accident has prevented Plaintiff from making a meaningful investigation of Defendant Xtreme Fitness's liability.

Defendant Alampi's assertion that Plaintiff was not prejudiced by the delay because it received notice of the lawsuit in time to file an answer and conduct discovery in the state court action lacks merit.  Plaintiff's argument is that the approximately two year delay before being notified of the *accident* subjected it to substantial prejudice because its ability to defend Xtreme Fitness in the state court action was materially limited by the delay, and rendered it unable to pursue possible claims against the manufacturer of the machine.  Plaintiff does not contend that it has suffered prejudice to its interests merely as a result of any delay in the reporting the *pendency of the lawsuit*. (Pl.'s Reply 1, Dkt. # 20.)  To point out Plaintiff's opportunity to file an answer in the state court action is to elevate form over substance.  It is of no consequence.  Furthermore, having an opportunity to conduct discovery and having the ability to make a meaningful investigation of the accident and examine relevant evidence are not the same.  Here, having all the time in the world to conduct discovery would be of no use to

Plaintiff because it is acknowledged that Defendant Xtreme Fitness sold its workout machines and discarded its business records when it closed nearly a year before Plaintiff learned of the accident. That Plaintiff had notice of the state court action in time to file an answer and conduct discovery does not affect the court's determination that Defendant Xtreme Fitness's failure to timely report Defendant Alampi's accident prejudiced Plaintiff's interests.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's motion for default judgment as to Defendant Xtreme Fitness [Dkt. # 8] is GRANTED.

IT IS ORDERED that Plaintiff's motion for summary judgment as to Defendant Alampi [Dkt. # 16] is GRANTED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 17, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 17, 2012, by electronic and/or ordinary mail.

S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522